# In the United States Court of Federal Claims

No. 17-843

(Filed: October 11, 2022)

```
* * * * * * * * * * * * * * * * *   *
                                    *
ACME WORLDWIDE ENTERPRISES,         *
INC.,                               *
                                    *
                    Plaintiff,      *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant,      *
                                    *
and                                 *
                                    *
INDUSTRIAL SMOKE & MIRRORS,         *
INC.,                               *
                    Defendant-Intervenor. *
                                    *
* * * * * * * * * * * * * * * * *   *
```

*John P. Moran*, Holland & Knight LLP, of Washington, D.C., for Plaintiff.

*Patrick C. Holvey*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom was *Conrad DeWitte*, Assistant Director, both of Washington, D.C.

## <u>MEMORANDUM OPINION</u>

**SOMERS**, Judge.

Before the Court is the government's Motion for Leave to Supplement its Invalidity Contentions. ECF No. 93 ("Motion"). Through its motion, the government seeks the Court's permission to supplement its invalidity contentions with additional prior art references that it claims to have uncovered in a renewed search following Judge Damich's April 6, 2020, claim construction order. ECF No. 64 ("Supplemental Claim Construction Order"). Plaintiff ACME Worldwide Enterprises, Inc. ("ACME") filed a response in opposition to the government's motion, contending that the government has not demonstrated good cause to supplement its invalidity contentions. ECF No. 94 ("Resp."). The motion has been fully briefed, and the Court held oral argument on September 15, 2022. ECF No. 117. After the argument, the Court issued an order denying the government's Motion, *see* ECF No. 121, and notified the parties that this

written Opinion would follow further explaining the reasons the Court denied the government's motion.[1]

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed suit on September 21, 2017, alleging that the government infringed upon United States Patent Number 8,690,575 (the "'575 patent") by incorporating it into multiple weapons training systems acquired from contractors. *See generally* ECF No. 1 ("Compl."). Plaintiff alleges that it is the sole owner of the '575 patent, *id.* ¶ 9, which claims invention of a "weapon simulator that is at least partially controlled by a host computer and simulates near actual recoil forces of a weapon via a gun active recoil unit." ECF No. 1-2 at 2. According to Plaintiff, the Army and Air Force entered into several contracts for the procurement of products that incorporated the M240H weapon recoil simulation system manufactured by Defendant-Intervenor, Industrial Smoke & Mirrors, Inc. ("ISM"). *See* Compl. ¶¶ 10–27. Plaintiff alleges that ISM's M240H weapon recoil system infringes on the '575 patent and that the government has infringed the patent by incorporating the product into weapons training systems acquired by the Army and Air Force. *Id.* ¶¶ 28–38. In response to the complaint, the government avers that the '575 patent is invalid and that, alternatively, it has not infringed any claim of the '575 patent. *See* ECF No. 10 at ¶¶ 39–40. To flesh out these defenses, the government served its non-infringement and invalidity contentions on Plaintiff in December 2018. *See* ECF Nos. 33, 38.

After the parties exchanged contentions and briefed construction of contested claim terms in the '575 patent, ECF Nos. 46–47, 49–50, Judge Damich issued a claim construction opinion on December 16, 2019. *See* ECF No. 55 (public version of the opinion released January 9, 2020). In the opinion and order, Judge Damich requested supplemental briefing regarding the proper construction of the claim term "gun active recoil unit." *Id.* at 10–12. He was concerned because the term is described differently in independent claims 1 and 14 of the '575 patent. *See id.* Namely, it is described in claim 1 as "comprising a slide tray, while in claim 14, the slide tray is 'disposed on' the gun active recoil unit." Supplemental Claim Construction Order at 7. On April 6, 2020, Judge Damich issued the Supplemental Claim Construction Order and adopted the "plain meaning[]" of "gun active recoil unit" in each claim; for claim 1, it includes a slide tray and for claim 14, it does not. *Id.* at 9. Critical to the analysis was the fact that claim 1 recites an apparatus claim and claim 14 recites a method claim. *See id.* at 8.

On January 27, 2022, the government filed its motion seeking to incorporate additional prior art references into its invalidity contentions that it originally served in December 2018. The government claims that it began investigating new prior art after Judge Damich issued the Supplemental Claim Construction Order. Motion at 2. The government suggests that the construction was not foreseeable and was a "new, complicated claim construction" that prompted a further search yielding the new prior art references. ECF No. 95 ("Reply") at 6. Because the government seeks to amend its invalidity contentions after the deadline set by the Court, *see* ECF No. 33 at 2, it must demonstrate good cause, *see* RCFC 16(b)(4); PRCFC 24.

---

[1] The Court also heard argument on the government's Motion for Leave to Supplement its Noninfringement Contentions. ECF No. 100. During the argument, however, counsel for the government withdrew the motion. *See* ECF No. 123 at 62:7–9. As a result, the Court directed the Clerk to reflect the withdrawal on the docket*, see* ECF No. 121, and the Court will not further discuss that motion.

**DISCUSSION**

**A.     Legal Standard**

Rule 16(b) of the Rules of the United States Court of Federal Claims ("RCFC") addresses scheduling orders.  Pursuant to RCFC 16(b)(4), a scheduling order may be modified "only for good cause and with the Judge's consent."  *See also CellCast Techs., LLC v. United States*, 152 Fed. Cl. 414, 420 (2021) ("The good cause standard of RCFC 16(b)(4) mirrors many local district court patent rules for amending contentions.").  Similarly, Rule 24 of the United States Court of Federal Claims Patent Rules ("PRCFC")  provides that a party may amend its invalidity contentions with leave and a "court order upon a showing of good cause."  The rationale behind the good cause requirement is that parties' contentions should be crystallized early in the litigation.  "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

Under either RCFC 16 or PRCFC 24, the government's proposed amendment is permissible only if it can demonstrate good cause.  Establishing good cause requires a showing that the moving party acted with diligence and that the amendment would not prejudice the non-moving party.  *See, e.g.*, *Return Mail, Inc. v. United States*, 152 Fed. Cl. 455, 459 (2021).  In the context of patent litigation, "[c]onsiderations in determining a party's diligence include additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order."  *CellCast Techs., LLC v. United States*, No. 15-1307, 2019 WL 5959571, at *5 (Fed. Cl. Oct. 30, 2019).

If the Court determines the moving party has been diligent, it next considers whether amendment would prejudice the non-moving party.  *See O2 Micro Int'l Ltd.*, 467 F.3d at 1363.  "Factors to consider when determining whether prejudice exists include whether the non-moving party has been genuinely surprised or harmed, whether discovery would be reopened, the effect of amendments on the construction of claim terms, and whether experts have staked out comprehensive positions with respect to claim construction."  *Return Mail, Inc.*, 152 Fed. Cl. at 459 (internal quotations and citations omitted).  However, the Court need not consider prejudice to the non-moving party if the moving party cannot establish diligence.  *See O2 Micro Int'l Ltd.*, 467 F.3d at 1368.

**B.     The Government Has Not Demonstrated Good Cause to Supplement its Invalidity Contentions**

**1.     The government failed to show that the Supplemental Claim Construction Order justifies amendment to its invalidity contentions**

The government contends that the impetus for moving to amend its invalidity contentions was the Supplemental Claim Construction Order in which Judge Damich construed the claim term, "gun active recoil unit."  Motion at 2; Reply at 3–4.  According to the government, the construction required a new search for prior art, which eventually revealed the relevant references that the government now seeks to include in its invalidity contentions.  *See* Motion at

2.  In support of its argument, the government asserts that, as a general matter, claim construction may provide an adequate justification to amend invalidity contentions, even after a judicially imposed deadline.  *See* Reply at 5.

It is true that a claim construction ruling can create good cause for the amendment of invalidity contentions, particularly when it is unanticipated.  *See CellCast Techs., LLC*, 152 Fed. Cl. at 421 (citing *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420 (2017)).  However, the government fails to explain how the Supplemental Claim Construction Order was unexpected or adverse.  Indeed, it does not provide much of any explanation as to why the Court's "plain meaning" construction of "gun active recoil unit" required it to undertake a new prior art search.  *See Bausch & Lomb Inc. v. Vitamin Health, Inc.*, No. 13-CV-6498, 2015 WL 13574308 at *3 (W.D.N.Y. Sept. 29, 2015) ("[A] '[c]ourt's differing claim construction in and of itself does not constitute good cause.'" (quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014))).  Nor does the government's motion explain how the Supplemental Claim Construction Order "change[d] the rules of the game," such that it could not previously have uncovered the art.  Resp. at 4 (citing *Sci. Applications Int'l Corp. v. United States*, 153 Fed. Cl. 485, 494 (2021) (quoting *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998))).  As set forth by Plaintiff, the government's motion leaves too much unanswered:

> (1) Why claim construction necessitated the addition of new references. That is, what specific new issue the construction of "gun active recoil unit" necessitated the addition of new references;
> (2) Which specific new references are sought to be added that address the unidentified new issue;
> (3) How any such new references sought to be added actually address the unidentified new issue;
> (4) When the Government started its search; or
> (5) Why, when the competing constructions of "gun active recoil unit" were known years ago, the Government did not perform a search as it now alleges is "needed."

Resp. at 4.  The critical change referenced by the government was that the Supplemental Claim Construction Order construed the term, "gun active recoil unit," differently in claim 1 than it did in claim 14.  Reply at 3–4.  Judge Damich, however, adopted the plain meaning of "gun active recoil unit" as it read in both claims.  Supplemental Claim Construction Order at 8.  In claim 1, the term is construed as *containing* a sliding tray; in claim 14, the term is construed as being *disposed on* a sliding tray.  *Id.*  The government fails to demonstrate how this difference led to a search that uncovered a plethora of additional prior art references.

In fact, the construction of "gun active recoil unit" should not have surprised the government at all.  Judge Damich adopted the plain meaning of "gun active recoil unit" as it read in the '575 patent's independent claims 1 and 14, a construction which Plaintiff proposed in its original claim construction brief.  *See* ECF No. 46 at 10–11 (contending that, as read in both claims 1 and 14, "[t]he term 'gun active recoil unit' is plain English and needs no construction").  As a result, the Court finds that, without a clearer and more developed explanation from the government, Judge Damich's construction of "gun active recoil unit" in the Supplemental

4

Construction Order does not create the foundation of good cause for the government to amend its invalidity contentions. *See, e.g.*, *Silver State Intellectual Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1162 (D. Nev. 2014) ("The fact that the Court adopts a claim construction different from that proposed by the party seeking to amend does not necessarily constitute good cause to amend, particularly where the Court adopts the construction proposed by the other party, as such a construction would not come as a surprise to the party seeking to amend." (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 901–02 (E.D. Tex. 2006))).

### 2.       The government failed to demonstrate that it acted with due diligence

Even if the Supplemental Claim Construction Order did change the rules of the game, so to speak, the government has not provided any concrete reasons for: (1) the delay between the issuance of the Supplemental Claim Construction Order (April 6, 2020) and the production of the new prior art references to Plaintiff (February 1, 2021); or (2) the delay between the production of the references and the filing of its motion (January 27, 2022). The government attempts to explain these extensive delays by contending it was diligent because it "retained a search firm, obtained and produced several thousand pages of prior art, analyzed all of that technical information, and reduced the 133 original references to just five for inclusion in its proposed supplemental contentions." Motion at 4. According to the government, the renewed prior art search revealed more than 133 additional references totaling over 5,600 pages of relevant material in multiple languages. *Id.* at 2–3. The government asserts that it sifted through the new prior art, produced all of it to Plaintiff, and narrowed it down to only several references that it attempts to include in its supplemental invalidity contentions. *Id.* at 4. However, completely absent from this explanation is any discussion of the dates during which the prior art search occurred or the length of time the search took. The government does not, for instance, state when it hired the search firm or how long the prior art search took. In short, the government has only informed the Court what it uncovered in terms of new prior art, but not why it took so long to do so. *See Karl-Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-876, 2016 WL 2855260, at *4 (N.D. Cal. May 13, 2016) ("There are no details about how many attorneys were engaged in the prior art search, how many hours the attorneys or search firm staff spent searching, or where they searched, which leaves the Court little foundation on which to base a finding of diligence."). There may be an explanation for the delay, but no explanation was provided to the Court.

Beyond reviewing prior art, which was located by a search firm, the government offers two additional arguments to attempt to justify its delay in moving to amend its invalidity contentions. First, it asserts that "COVID-related and Army-related issues" caused a delay in inspecting the accused product contracted for by the Army. *See* Motion. at 5. Second, the government indicates that it prioritized discovery regarding recently delivered Air Force systems that contain the M240H weapon recoil system because it assumed that Plaintiff would amend its infringement contentions, which may prompt more sweeping invalidity contentions. *See id.* at 5–6; Reply at 5.

Turning to the first argument, the government states that an on-site visit of the Army's accused product was postponed until February 22, 2021, and it suggests, without elaboration, that viewing the Army's M240H recoil system bore on the invalidity analysis. *See* Motion at 2,

4–5; Reply at 2 (arguing that the inspection, "while primarily directed to assessing infringement in light of the new construction, also bore on the Government's invalidity analysis, including the new art subject to this motion"). In what seems to be a familiar refrain in this Opinion, the government fails to explain precisely how inspection of the Army's accused product informed its analysis of the new prior art, such that it is a contributing factor of the nearly 22-month period between the Supplemental Claim Construction Order and the filing of the motion. Did the search firm need to view pictures and video of the Army accused product to proceed? The government only says that the inspection "necessarily informed the Government's analysis of the mass of prior art it had diligently obtained in the intervening period." Reply at 2. Did the inspection reveal something that completely changed the way in which the government viewed the new prior art uncovered by the search firm? This seems unlikely because all the prior art references uncovered by the search firm were produced by the government *several weeks prior* to the inspection. *See* Motion at 2 (indicating that all relevant prior art references were produced on February 1, 2022). Without further explanation from the government, beyond the unspecific and conclusory contention that the inspection "bore on the Government's invalidity analysis," the Court is left to speculate as to how, if at all, the inspection affected the government's search for and review of the new prior art. *See* Reply at 2; *see also Broadcom Corp. v. Emulex Corp.*, No. SACV 09-1058, 2010 WL 11465323, at *3 (C.D. Cal. Nov. 1, 2010) (finding a "'naked assertion of diligence' and lack of adequate explanation for . . . delay . . . insufficient to establish 'good cause'") (citing *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No C0-03117, 2007 WL 2221029, at *1 (N.D. Cal. July 30, 2007)).

Second, the government indicates that in December 2021, the Air Force took delivery of two weapons system simulators that contain ISM's weapon recoil simulator that allegedly infringes upon the '575 patent. Motion at 5. The government argues that Plaintiff will certainly have to amend its infringement contentions because the Air Force products simulate a different weapon. *Id.*; Reply at 2–3. As a result, the government suggests that instead of promptly supplementing its invalidity contentions, it prioritized gathering discovery related to the Air Force products, anticipating that it may need to further amend its invalidity contentions in response to future infringement contentions. Motion at 6. Plaintiff counters this argument by (1) asserting that Plaintiff need not amend its infringement contentions, and (2) by arguing that even if it did intend to amend its contentions, this is irrelevant in assessing the government's diligence for purposes of this motion. Resp. at 6–8. The Court agrees that working on discovery related to products that the government believes will, at some later point, be at issue in the case does not bear on the government's diligence in moving to amend its invalidity contentions. Even if it did, the government only says that it "prioritized getting that discovery resolved because it may prompt more sweeping invalidity contention amendments." Motion at 6. It provides no further detail about how "getting that discovery resolved" impeded its ability to move to amend its invalidity contentions for nearly 22 months after the issuance of the Supplemental Claim Construction Order.

Vague references to discovery issues and pandemic-related delays without linking them to efforts to uncover and produce new prior art are insufficient to establish good cause under the circumstances. *Shire LLC v. Amneal Pharms., LLC*, No. 2:11-cv-3781, 2013 WL 6858953, at *2 (D.N.J. Dec. 26, 2013) (noting that "[a]mendments to infringement and invalidity contentions are not granted as liberally as requests for amendments to pleadings . . ."). Moreover, the

6

government does not offer any reasons as to why it waited until January 27, 2022, to file the motion. Even assuming that the Supplemental Claim Construction Order was a surprise (which there is no evidence that it was), the government does not provide a timeline or offer a detailed explanation for the delay in filing. *See O2 Micro Int'l. Ltd.*, 467 F.3d at 1367–68 ("Given [plaintiff's] delay in moving to amend its infringement contentions and its lack of adequate explanation for this delay, we conclude that the district court did not abuse its discretion in finding a lack of diligence and therefore a lack of 'good cause.'"). In *Shire LLC v. Amneal Pharms., LLC*, defendants sought to amend their invalidity contentions over a year after receiving relevant documents in discovery. 802 F.3d 1301, 1309 (Fed. Cir. 2015). They suggested that it took so long to move because they had to review two million pages of produced documents to locate the relevant information. *Id.* The Federal Circuit found that the need to review the documents, without more, was an insufficient explanation for a year-long delay in moving to amend the invalidity contentions. *Id.* The circuit also found it significant that defendants did not ask plaintiff for permission to supplement their invalidity contentions until over a year after the production of the pertinent documents. *Id.*

Similarly, here, the government produced the relevant prior art references in February 2021, but it did not move to amend its invalidity contentions until January 27, 2022. Additionally, there is nothing before the Court that indicates the government ever reached out to Plaintiff to ask for permission to supplement its invalidity contentions or to at least alert Plaintiff that it may be an issue. Indeed, Plaintiff observes that the parties submitted a joint status report nearly two months after the issuance of the Supplemental Claim Construction Order, and the government could have acknowledged then that it was reviewing new prior art and may eventually need to amend its invalidity contentions. Resp. at 7. At the very least, the government could have advised Plaintiff and the Court that it was conducting a revamped prior art search. However, the government did not so. Nor did it inform Plaintiff's counsel that that it may seek leave to amend its invalidity contentions until November 21, 2021. *Id.* at 9. Given the timeline of events and the government's failure to notify Plaintiff or the Court earlier that it may seek to amend its invalidity contentions, the Court cannot conclude that the government was diligent.

Finally, the government principally relies upon one case to support its diligence argument: *Return Mail, Inc.*, 152 Fed. Cl. 455. In that case, Judge Lettow set a schedule on November 12, 2019, and the plaintiff filed an amended complaint on December 23, 2019. *Id.* at 458. The parties engaged in full discovery through August 2020, and the plaintiff supplemented its interrogatory responses on August 17, 2020. *Id.* at 459–60. The government moved to supplement its invalidity contentions in October 2020, and Judge Lettow found that it had acted diligently. Important to Judge Lettow's analysis was the fact that the parties were engaged in discovery through August 2020. *Id.* at 460. Here, the government argues that because the parties were similarly engaged in discovery when it filed its motion, the Court should hold that it acted diligently. Motion at 5–6. Unfortunately for the government, however, Judge Lettow did not find that the defendant was diligent simply because it moved to amend shortly after the close of discovery. He also found it critical "that the government's motion is based in part on the 'additional . . . results of discovery.'" *Return Mail*, 152 Fed. Cl. at 460 (citing *Cellcast Techs., LLC*, 2019 WL 5959571, at *5). The government's request here is not the result of additional discovery; instead, the government claims that the Supplemental Claim Construction Order,

decided well before the close of discovery, was the catalyst. Reply at 3–4. The government suggests, albeit unconvincingly, that its delay in moving may have been caused by discovery issues, *see* Motion at 2, 6, but it has not argued that information uncovered in discovery prompted its motion. Additionally, Judge Lettow took note that the plaintiff in *Return Mail* amended its complaint and supplemented interrogatory responses, which reasonably led the defendant to reassess its invalidity contentions. 152 Fed. Cl. at 459–460. The government argues that the situation is analogous because Plaintiff will have to serve new infringement contentions related to the Air Force accused products. Motion at 6. Plaintiff, however, has not taken any steps, such as seeking leave to amend its complaint or contentions, that would reasonably offer a reason for the government to amend its invalidity contentions. As a result, the government's reliance on *Return Mail* is misplaced.

Given the foregoing, the Court finds that the government was not diligent in moving to supplement its invalidity contentions.

### 3.     The Court need not address whether Plaintiff would be prejudiced

With regard to the lack of prejudice to Plaintiff, the government makes what can only be characterized as a very limited argument, at best. *Id.* at 7. In eight sentences, three of which contain six or fewer words, the government argues in a conclusory fashion that: "This amendment will not prejudice Plaintiff." *Id*. To the extent the government further elaborates on the alleged lack of prejudice to Plaintiff, it asserts that Plaintiff has been in receipt of the additional references since February 2021, discovery is still open, and no expert reports have been rendered. *Id.* Plaintiff disagrees, suggesting that it would be unduly prejudiced if the government's motion was granted. Resp. at 8–10. Plaintiff asserts that the government is trying to sneak in additional prior art references without request or prior notice. *Id*. at 9. According to Plaintiff, the government first mentioned amending its invalidity contentions in late 2021 based on a patent that was already discussed in the government's original invalidity contentions. *Id.* It contends that altering the parameters of the case and extending fact discovery would be prejudicial to Plaintiff—the case has been pending since 2017 and fact discovery was nearing a close at the time the motion was filed. *Id.* at 8–10.

Although the government has failed to carry its burden to show that Plaintiff will not be prejudiced, the Court need not actually consider prejudice to Plaintiff because it has already concluded that the government did not act with diligence. *See O2 Micro Int'l Ltd.*, 467 F.3d at 1368; *see also Sci. Applications Int'l Corp. v. United States*, 153 Fed. Cl. 485, 493 (2021) ("If a court determines that the party seeking to amend or supplement its contentions was not diligent, the court need not consider the question of prejudice as to that party."). As a result, because the government has not demonstrated that it acted diligently, the Court holds that the government has not established good cause to supplement its invalidity contentions.

**CONCLUSION**

For the reasons stated above, the Court **DENIES** the government's Motion to Supplement its Invalidity Contentions.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge